CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/27/2021
JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |  |
|---|---|---|
| NA'STARJA S.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 6:20-CV-8** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Na'Starja S. ("Na'Starja"), proceeding *pro se*, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f.  Na'Starja received benefits as an 8-year old child but was found to improve such that she no longer qualified for child benefits at age 16, or for adult benefits thereafter. Na'Starja generally objects to the ALJ's decision and asserts that she continues to suffer from marked psychological limitations, a learning disorder, seizure disorder, and anxiety such that she is disabled. Dkt. 4 & 18. Having reviewed the record, I conclude that substantial evidence supports the Commissioner's decision in all respects.  Accordingly, I

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

**RECOMMEND DENYING** Na'Starja's Motion for Summary Judgment (Dkt. 4 & 18) and

**GRANTING** the Commissioner's Motion for Summary Judgment.[2] Dkt. 22.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

the Commissioner's conclusion that Na'Starja was no longer disabled under the Act.  Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  This standard of review requires the court to "look[] to

an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support

the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig

v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  "The threshold for such

evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the

Commissioner will be affirmed where substantial evidence supports the decision.  Hays v.

Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

In November 2007, when Na'Starja was eight years old, the Commissioner found her

disabled due to a learning disorder, anxiety disorder, borderline intellectual functioning, and

seizure disorder. R. 113–20.  Subsequently, in November 2015, the Commissioner performed a

continuing disability review and found that Na'Starja's condition improved such that she was no

longer disabled. R. 133–36.  Na'Starja requested a hearing before an ALJ, and in February 2019,

---

[2] As a pro se litigant, Na'Starja is entitled to a liberal construction of her pleadings, thus I will construe her submissions as a motion for summary judgment. See Miller v. Barnhart, 64 F. App'x 858, 859 (4th Cir. 2003).

ALJ L. Raquel BaileySmith held a hearing at which Na'Starja was represented by counsel.

R. 66–104. Na'Starja, her mother Dionne Saunders, and vocational expert Andrew Beale

testified at the hearing. Id.  On April 2, 2019, the ALJ entered her decision finding that

Na'Starja's disability ended on November 19, 2015, and she has not become disabled again since

that date. R. 19–54.

A child is disabled within the meaning of the Social Security Act if she has a "physical or

mental impairment, which results in marked and severe functional limitations, and . . . which has

lasted or can be expected to last for a continuous period of not less than 12 months."[3] 42 U.S.C.

§ 1382c(a)(3)(C)(i).  In November 2007, the Commissioner awarded Na'Starja disability based

on her learning disorder, anxiety disorder, borderline intellectual functioning and seizure

disorder. R. 24. However, after the Commissioner awards SSI benefits to an individual under the

age of 18 based upon "an impairment (or combination of impairments) which is likely to

improve," the Commissioner must periodically conduct an evaluation to determine if the

individual remains eligible for benefits. 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). This process is

referred to as a "continuing disability review." 20 C.F.R. § 416.989. When performing the

continuing disability review, the Commissioner uses a three-step medical improvement review

standard to determine whether the child's disabling condition improved since the most recent

---

[3] The Social Security regulations provide a three-step sequential evaluation process for determining whether a minor is disabled.  20 C.F.R. § 416.924. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is not disabled.  Id. § 416.924(a),(b). Next, the ALJ must determine whether the claimant suffers from "an impairment or combination of impairments that is severe," if not, the claimant is not disabled. Id. § 416.924(a),(c). To qualify as a severe impairment, it must cause more than a minimal effect on the claimant's ability to function.  Id. § 416.924(c). If an impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. Id. If the claimant has a severe impairment, the analysis progresses to step three where the ALJ must consider whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listing. Id. § 416.924(a),(d). If the claimant has such impairment, and it meets the duration requirement, the claimant is disabled. Id.

3

favorable decision. See 20 C.F.R. § 416.994a(a); Social Security Ruling (SSR) 05–03p  (Apr. 27, 2005).

In the evaluation of continuing disability, the Commissioner must first determine whether the claimant experienced medical improvement in her disabling impairment since the comparison point decision.[4] 20 C.F.R. § 416.994a (a)(1), (b)(1). If there has been no medical improvement, the claimant continues to be disabled, unless an exception applies. Id. Second, if the comparison point decision was made on or after January 2, 2001, and there has been medical improvement in the child's condition, the Commissioner must determine whether the impairment the claimant had at the comparison point decision now meets or medically equals the same listing that it met or medically equaled at the time of the comparison point decision, or whether the impairment functionally equals the listings. Id. § 416.994a(a)(1), (b)(2); SSR 05–03p. If so, the claimant continues to be disabled, unless an exception applies.[5]  20 C.F.R. § 416.994a(a)(1), (b)(2). Third, if the child's impairment no longer meets or medically equals the same listing that the impairment met or equaled at the time of the comparison point decision, and does not functionally equal the listings, the Commissioner must determine whether the child is currently disabled under the three-step sequential analysis in 20 C.F.R. § 416.924 for determining whether a child is disabled in the first instance. Id. § 416.994a(a)(1), (b)(3). If not, the claimant ceases to be disabled, and benefits are terminated. Id.

---

[4] Here, the comparison point decision was the 2007 decision awarding Na'Starja benefits. R. 24.

[5] For purposes of steps one and two of the analysis, there are two (2) groups of exceptions that may terminate benefits even absent medical improvement. Those exceptions do not apply in this case, and thus, there is no need to discuss them in detail. 20 C.F.R. § 416.994a(e) & (f).

When conducting this Step Three analysis, the Commissioner must consider the six relevant domains[6] of functioning to determine whether a severe impairment functionally equals a listed condition: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).  For a claimant to be found disabled, marked limitations must be assessed in at least two domains or an extreme limitation assessed in one domain.  Id. § 416.926a(a).  "Marked" limitation is defined as "more than moderate" but "less than extreme."  Id. § 416.926a(e)(2)(i)  A minor has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. Id.  Extreme limitation is defined as "more than marked."  Id. § 416.926a(e)(3)(i).  While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

In 2019, the ALJ found that Na'Starja had medically improved from the 2007 comparison point decision, such that she no longer met or functionally equaled the listings. R. 25–26.  The ALJ then considered the six functional domains and concluded that from November 19, 2015 through June 25, 2017, Na'Starja's severe impairments did not meet, medically equal or functionally equal the listings. R. 26–43.  The ALJ determined that Na'Starja has not developed any new impairment or impairments since turning 18 and that she continued to have the severe impairments of borderline intellectual functioning and learning disorder after age 18. R. 44.

The ALJ found that, since turning age 18, Na'Starja's impairments did not meet or medically equal a listing, and that she has the residual functional capacity ("RFC") to perform a

---

[6] The domains "are broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).

full range of work at all exertional levels. R. 46.  The ALJ determined that Na'Starja has the

following non-exertional limitations: understand, remember, apply and carry out unskilled

repetitive tasks for two hours at a time with normal breaks; concentrate, persist and maintain

pace to complete unskilled repetitive tasks that do not require stringent quotas or fast pace;

routine interactions with coworkers, supervisors and the public in work settings where the job

duties involve work primarily with objects rather than people; and adapt to changes associated

with unskilled repetitive work. R. 46.

The ALJ determined that Na'Starja has no past relevant work, and that she can perform

jobs that exist in the national economy, such as kitchen helper, counter supply worker and

cleaner. R. 52–53.  Thus, the ALJ determined that Na'Starja was no longer disabled as of

November 19, 2015. R. 53.  Na'Starja appealed the ALJ's decision and on February 11, 2020,

the Appeals Council denied her request for review. R. 1–4.  This appeal followed.

## ANALYSIS

Na'Starja was eight years old when she first qualified for benefits, and 16 years old when

the Commissioner determined she improved such that she no longer qualified for benefits.  At

the time of the ALJ's decision, Na'Starja graduated from high school, and worked part-time as a

cashier at Walmart. R. 88–89.

### 2007-Disability Benefits Awarded

In 2007, when 8-year-old Na'Starja qualified for benefits, she was diagnosed with a

seizure disorder, anxiety disorder, borderline intellectual functioning and a learning disorder.

R. 25.  Na'Starja was prescribed medication to address her seizure disorder. R. 702–03.

Na'Starja's mother reported that she had a fair result from the anti-convulsive mediation and still

had seizures occasionally. R. 760. Na'Starja's full scale IQ tested at 88 and her education record

reflected that she required one-on-one assistance. R. 25.  In 2007, Vicki Hogan, a visiting

teacher, completed a sociocultural report and noted that Na'Starja has trouble focusing on her

work, does not comprehend was is being asked of her, needs one on one support, rarely

understands and remembers oral instructions, and cannot read and follow simple or detailed

written directions. R. 253. Na'Starja was placed in special education at school as a student with a

Specific Learning Disability. R. 25, 763.

On November 12, 2007, clinical psychologist E. Wayne Sloop, Ph.D., P.C., performed a

consultative evaluation of Na'Starja and noted that she has difficulties attending and completing

tasks in school, has anxiety in school, has difficulty with receptive language, gets confused easily

when given instructions, but has age-appropriate expressive language. R. 763.  Na'Starja tested

in the range of borderline intelligence.  Dr. Sloop diagnosed learning disorder, anxiety disorder,

borderline intellectual disorder, and seizure disorder. Id. Dr. Sloop gave Na'Starja a fair

diagnosis, considering that she was receiving counseling, was in special education classes and

was receiving medical care. Dr. Sloop recommended continuing counseling and continuing

medication for her seizure disorder. Id.

The SSA reviewed Na'Starja's records and determined that she had marked limitations in

the domains of acquiring and using information and attending and completing tasks. R. 768–769.

The reviewing physicians found that Na'Starja had less than marked limitations with the

domains of interacting and relating with others, and health and physical well-being; and no

limitation with the domains of moving about and manipulating objects or caring for yourself.

R. 768–69. Thus, Na'Starja had marked limitations in two domains and qualified for child

disability benefits.

## 2015- 2017- Disability Benefits Ended through Age 18

Na'Starja was in the 9th grade during the 2014-15 school year and had a GPA of 1.714, with F's in Algebra, Earth Science and Math Lab. R. 773. She participated in a ROTC class. Na'Starja had an individualized education plan ("IEP") and was in general education classes with special education teachers or support. R. 321–40.

On May 13, 2015, Na'Starja's Algebra I teacher Megan Keenan completed a Teacher Questionnaire and indicated that her reading, math and written language levels are below grade level. R. 306. Ms. Keenan rated Na'Starja's activities in the domain of acquiring and using information as either obvious or serious problems. R. 307. Regarding the domain of attending and completing tasks, Ms. Kennan found that Na'Starja had obvious or serious problems with focusing long enough to finish an assigned activity, carrying out multi-step instructions, organizing her things, completing her class assignments, and completing work accurately without careless mistakes. R. 308. Ms. Keenan found that Na'Starja had no problems with the domains of interacting and relating with others, moving about and manipulating objects, or caring for herself. R. 309–11.

In May 2015, Na'Starja visited David Gregory, M.D., with Lynchburg Family Medicine and complained of intermittent anxiety approximately three times a week. R. 784. Na'Starja's physical and mental exam were normal. R. 785. Dr. Gregory found Na'Starja's symptoms consistent with depression and recommended follow up with Horizon Behavioral Health. He stated that Na'Starja was "too young to start any medications," and recommended a healthy diet and moderate exercise. Id.

On May 15, 2015, Na'Starja was evaluated by Horizon Behavioral Health for anxiety. R. 848. Na'Starja reported increased anxiety for the past two months, demonstrated by a

tendency to hyperventilate when in class or taking a test. Na'Starja reported worrying about what others think of her and struggling in classes. Id. The evaluator recommended short term, goal-directed therapy to alleviate the signs and symptoms of anxiety, along with a psychiatric assessment, medication management and case management services. R. 850.

In October 2015, Na'Starja underwent a comprehensive vocational evaluation by evaluator Donna Gutierrez, M.S. Ms. Gutierrez noted that Na'Starja should graduate in 2018, has a supportive mother, does not have a driver's license, has difficulty following multi-step instructions and has no employment experience. R. 314. Ms. Gutierrez noted that Na'Starja followed demonstrated and simple oral instructions but had difficulty with longer and more detailed instructions. R. 316. She worked easily with her hands, had the ability to visualize how to assemble parts after studying a diagram, and doing trial and error assembly. She sorted chips at a near-competitive rate, showing potential to meet a competitive standard with practice. Na'Starja reported discomfort in her upper arms and shoulders while working with objects overhead. Id. Ms. Gutierrez suggested potential part-time jobs while Na'Starja finishes high school of hand packer, building cleaning worker, hostess, dishwasher, and locker room/coat room/dressing room attendant. R. 315.

Dr. Sloop completed a second consultative examination of Na'Starja in November 2015. R. 803–08. Dr. Sloop noted that Na'Starja is below grade level in math, reading and written language, and receives special education services. R. 803. Na'Starja reported "growing out" of her seizure disorder. R. 804. She reported anxiety over her grades, occasional irritability, and some symptoms of depression. She indicated some panic attacks after a 2014 motor vehicle accident, but she had not experienced one in "a long time now." R. 804. Na'Starja reported experiencing migraine headaches three or four times a month. Id. Dr. Sloop diagnosed

borderline intellectual functioning and adjustment disorder with mixed anxiety and depressed mood. R. 806–07. Dr. Sloop found Na'Starja's impairments to be of mild severity and gave her a good prognosis. Dr. Sloop noted that Na'Starja had borderline intellectual functioning, but no problems with expressive or receptive language, no problems with gross or fine motor skills, and adequate social functioning. He found that Na'Starja had appropriate self-care skills, and does well with concentration, persistence and pace. R. 807.

In November 2015, state agency consultants Joseph Duckwall, M.D., and Howard Leizer, Ph.D., reviewed Na'Starja's records and determined that she had less than marked limitation with the domain of acquiring and using information, and no limitation in the remaining domains. R. 811–12. In explanation, they stated that Na'Starja is in the 10th grade, is not a behavior problem in school and has one special education resource class. She reports having friends and getting along with peers and adults. Na'Starja will self-advocate and ask for help if she feels she needs it, she prioritizes her work, and she is developing effective reading strategies to comprehend text. They noted that Na'Starja has good attendance, has appropriate behavior in class, and passes class time wisely. Na'Starja reported some anxiety and a panic attack after being involved in a motor vehicle accident in 2014 but had not had a panic attack recently. R. 815. She has normal gait, posture, and gross motor skills; she readily and legibly writes her first and last names; she is independent with self-care skills; and she completes chores at home. Overall, they found that Na'Starja's impairments do not significantly interfere with her daily functioning when compared to other children of the same age. Id. Thus, the SSA determined that Na'Starja's condition improved as of November 2015, and her benefits were terminated. R. 133–36.

In January 2016, Na'Starja had an IEP eligibility review, and her ROTC, Algebra I and Resource teachers reported that she exhibits a good attitude, is cooperative, completes homework, accepts responsibility, looks happy most of the time and participates in class. R. 390. Na'Starja's World History and World Literature teachers reported that she exhibits very little effort, does not complete make up work, struggles to organize information, and has inadequate participation. R. 390–91.

Na'Starja followed up with Lynchburg Family Medicine in January 2016 and reported experiencing anxiety at times and taking Motrin for migraine headaches. R. 825.  Na'Starja reported that flickering lights and extreme temperatures trigger her migraines. R. 827.  Lydia McKay, PA-C, determined that Na'Starja should limit her physical activities at temperatures above 90 degrees or below 40 degrees due to her history of seizures and migraines. R. 830–31.

Na'Starja consulted with neurologist Erika Axeen, M.D., in March 2016 regarding her migraine headaches. R. 836. Na'Starja's physical exam was normal. Her mental status exam revealed some difficulty following multi-step directions.  Na'Starja had normal language fluency and comprehension; was alert and oriented; had appropriate affect, mood and behavior; and had normal sensation, reflexes, coordination and gait. R. 838.  Dr. Axeen was pleased that Na'Starja remained seizure free and recommended continuing to follow seizure precautions regarding baths and large bodies of water. Id. She recommended Amitriptyline for headaches and encouraged exercise. R. 839.

Ms. Keenan completed a second Teacher Questionnaire in June 2016, and noted that Na'Starja's reading, math and written language are all below grade level. R. 401. She noted that Na'Starja had an obvious problem with several activities in the domain of acquiring and using information, including the ability to read and comprehend written material, comprehending and

11

doing math problems, expressing ideas in written form, learning new material and recalling and
applying previously learned material. R. 402. Ms. Keenan found that Na'Starja had no problem
with most of the activities in the domain of attending and completing tasks, aside from an
obvious problem with completing class and homework assignments. R. 403. Ms. Keenan found
no issues with the remaining domains. R. 404–06.  She noted that Na'Starja's epilepsy diagnosis
doesn't impact her daily school education and she hasn't had a seizure in three years. R. 407.
Ms. Keenan was interviewed by an SSA Disability Hearing Officer during Na'Starja's 11th
grade year and stated that her capabilities had not changed from the 2016 report. R. 462. She
noted that Na'Starja is good with verbal conversation, she has some obvious problems learning
new material and recalling previously learned material, and she has some problems with paying
attention and concentrating in class.  She reported that Na'Starja has a headache action plan at
school. Id.

      In August 2016, state agency physicians Joseph Familant, M.D. and Stephen Saxby,
Ph.D., reviewed Na'Starja's records and determined that she had marked limitations in the
domain of acquiring and using information, and less than marked or no limitations in the other
domains. R. 904–18.

      Na'Starja followed up with the neurology office in October 2016, and they continued her
Amitriptyline dose and recommended a better sleep routine. R. 929.  They also sent a letter to
Na'Starja's school recommending a headache action plan to allow Na'Starja to go to the nurse's
office at the onset of a headache to receive medication and lie down for 20 minutes.

      In December 2016, Na'Starja followed up with Lynchburg Family Medicine and reported
anxiety and panic attacks that were mild and intermittent. R. 1010.  Her physician noted that
Amitriptyline prescribed for Na'Starja's headaches should also help with panic and anxiety

12

symptoms, and Na'Starja noted some improvement since being on the medication. R. 1012. The physician recommended counseling. Id.

In February 2017, Na'Starja followed up with her neurologist regarding her migraines. R. 1020. She reported having no more than two headaches a month and was still having difficulty sleeping. Id. Na'Starja reported functioning at less than half of her ability due to headaches about 6 days in the last 3 months, but not missing any activities due to headaches. R. 1021. Her neurologist planned to wean Na'Starja off the Amitriptyline "in the coming months." R. 1022.

In April 2017, Na'Starja visited Horizon Behavioral Health and reported doing okay in school and wanting to graduate and get into a career as soon as possible. R 965.  Na'Starja reported enjoying working part-time during school at Goodwill. Id. She stated that the schedule is stressful, but she enjoys the work atmosphere. She reported being excited about graduation and planning to continue to work at Goodwill unless she can find a job in retail. Id.

**June 25, 2017- After Age 18**

Na'Starja began working as a cashier at Walmart in July 2017. R. 47.  Na'Starja was discharged from her mental health counseling in August 2017 because she turned 18 and was no longer compliant with outpatient therapy. R. 962.  Na'Starja reported learning to manage her anxiety and working at Walmart to overcome social anxiety. Id.

In August 2017, Na'Starja visited her neurologist and reported infrequent mild headaches. R. 999.  Her mental status and physical examinations were both normal. R. 1000. She was assessed with episodic migraines off Amitriptyline with a more regular sleep and eating routine. R. 1001.

Na'Starja became pregnant in October 2017. R. 997. She had been seizure free since 2009 and appeared well during her physical examination. R. 1171–74.  In November 2017, Sabaina Arshad, M.D., recommended that Na'Starja should work for only 20 hours and should lift no more than 25 pounds. R. 1130.

In December 2017, Na'Starja established care with an adult neurology clinic. R. 1095. She reported working as a cashier at Walmart and going to high school. Na'Starja reported no pregnancy complications, and the clinic determined that her epilepsy was well controlled and required no treatment. R. 1096–98.  Na'Starja's episodic migraines were poorly controlled, and she was advised to take Tylenol for them during pregnancy.  She was diagnosed with delayed sleep phase syndrome and advised to improve her sleep hygiene. R. 1098.

Na'Starja had a breakthrough seizure at school in February 2018, with bilateral hand numbness, vision loss, an inability to speak and loss of awareness. R. 1189.  The neurology clinic restarted Na'Starja on epilepsy medication, and found her migraines reasonably controlled. R. 1191–92.

Na'Starja gave birth to her daughter in June 2018. R. 1205.  Na'Starja graduated from high school with a GPA of 1.65. R. 588. In August 2018, Lydia McKay, PA-C, released Na'Starja to return to work on September 1, 2018 but restricted her to lifting no more than 25 pounds until she was six months postpartum. R. 1128, 1205–07.

In September 2018, Dustin Stewart, M.D., stated that Na'Starja was physically capable of returning to work, and could lift over 10 pounds. R. 1201.

**Testimony**

In June 2016, Na'Starja's mother, Dionne Saunders, completed a Function Report, indicating that Na'Starja had limited ability to perform certain activities, including swimming,

driving a car, washing and putting away clothes, using public transportation by herself, cooking a meal for herself, keeping busy on her own, finishing things that she starts, completing her homework, and completing her chores. R. 27, 414–21.

At the 2019 administrative hearing, Na'Starja testified that she is 19 years old and lives with her mom, sister, and infant daughter. R. 71–72.  Na'Starja testified that she does not have a driver's license and currently works as a cashier at Walmart approximately four hours a day, 3–4 days a week. R. 73– 74.  Na'Starja testified that she cannot work full-time because her back starts to "give out" after standing up for a long period of time. R. 75.  Na'Starja takes seizure medication. R. 77.  Her last seizure was in February 2018, she had no seizures for years before 2018 and no seizure since. R. 78.  Na'Starja testified that she takes Tylenol as needed for headaches and is not receiving any medical treatment for her back pain. R. 78.

Na'Starja described difficulties in school with math, history and literature; difficulty focusing; and needing homework help. R. 80.  Na'Starja's mother testified that she had a learning disability, was given an IEP beginning in Kindergarten and was in special education classes throughout her schooling. R. 86.  Na'Starja struggles to keep up with her part-time work schedule, and her mother drives her to and from work, and helps her keep up with her appointments. R. 88–89.  Na'Starja doesn't cook, is responsible to help keep the house clean and care for her child. R. 91.

**ALJ's Analysis**

The ALJ reviewed Na'Starja's records and concluded that the medical evidence supports a finding that her medical condition improved as of November 19, 2015. R. 25.  The ALJ noted that despite difficulty with school, Na'Starja no longer required one-on-one assistance to complete assignments and her attention and concentration were intact during her mental status

examinations. R. 25.  The ALJ noted that Na'Starja had difficulty following multi-step

instructions, but that Dr. Sloop found that Na'Starja had good ability to focus on a new task,

good ability to sustain attention and persist on tasks, and good pace of thinking and task

completion. R. 25, 805. The ALJ noted that Na'Starja did not demonstrate problems

understanding language and understood what was said to her. R. 26. Further, Na'Starja was

weaned off her seizure medication and had no seizures for several years. R. 26.

The ALJ evaluated Na'Starja's degree of limitation for the six functional domains from

the date of improvement, November 19, 2015, to the date of her 18th birthday, June 25, 2017.

R. 26.  The ALJ noted Na'Starja's testimony at the administrative hearing that her impairments

had not improved; and specifically, that she had difficulty in school, particularly with math, that

she had trouble completing assignments and would get frustrated; and that she had a workforce

program to help her get a job at a camp. R. 26.  The ALJ noted Dionne Saunders' testimony that

Na'Starja had seizures, was forgetful, did not complete her chores, was in special education

classes at school, had a learning disability, had difficulty understanding people, and struggled

with written expression and math. R. 27. The ALJ considered the Function Report completed by

Ms. Saunders on June 6, 2016, indicating that Na'Starja had limited ability to perform certain

activities, including swimming, driving a car, washing and putting away clothes, using public

transportation by herself, cooking a meal for herself, keeping busy on her own, finishing things

that she starts, completing her homework, and completing her chores. R. 27, 414–21.

The ALJ reviewed Na'Starja's education and medical records in detail. R. 27–34.

Specifically, the ALJ considered Na'Starja's IEPs, her academic grades, and the teacher reports.

The ALJ reviewed Ms. Keenan's Teacher Questionnaires for the years 2015 and 2016, and Ms.

Keenan's interview with a disability hearing officer.  R. 28–30. The ALJ considered Na'Starja's

primary care provider's treatment notes, including physical examinations reflecting normal

strength, tone and gait. R. 27.  The ALJ noted that Dr. Gregory recommended therapy for

Na'Starja's anxiety. R. 28.  The ALJ reviewed the treatment notes from Horizon Behavioral

Health regarding Na'Starja's anxiety, and that she had normal appearance, attitude, and

psychomotor activity on examination. R. 28.  The ALJ reviewed the October 2015 vocational

evaluation, and noted the vocational specialists' statement that Na'Starja should avoid

occupations that would require her to do calculations; that detailed oral instructions should be

presented in short segments and/or supplemented with written and demonstrated instructions;

and that a job coach would be advisable. R. 28.   The ALJ also reviewed Dr. Sloop's November

2015 evaluation, which she found persuasive. R. 28.

The ALJ reviewed Na'Starja's consultation with neurologist Dr. Axeen for frequent

headaches, and Dr. Axeen's conclusion that the headaches were not related to epilepsy.  Dr.

Axeen recommended that Na'Starja exercise and prescribed Amitriptyline. R. 30.  The ALJ

noted that Na'Starja reported not missing school due to headaches, but stated that she functioned

at less than half of her ability for 10 days out of the past three months due to headaches. R. 31.

The ALJ also noted that Dr. Axeen weaned Na'Starja off Amitriptyline once her senior year

ended. R. 31.

The ALJ noted that Na'Starja characterized her anxiety as "mild" in 2016, and in 2017

she reported doing okay in school and wanted to graduate and get into a career as soon as

possible. R. 31.

The ALJ  concluded that Na'Starja's seizures were well-controlled during this period,

and her anxiety was mild. R. 32.  The ALJ noted that Na'Starja had a learning disability and

borderline intellectual functioning, and her assignment completion, concentration and effort

varied from class to class and year to year. Id. She noted that multiple examiners found that Na'Starja had difficulty with multi-step instructions. The ALJ noted that despite her deficits, Na'Starja can wash dishes, do laundry, help with cooking, participate in community events, and perform independent self-care. Id.

The ALJ considered the medical opinions in the record and found persuasive Dr. Sloop's November 2015 consultative report; Lydia McKay's opinion that Na'Starja should limit her physical activity in extreme temperatures; neurologist Dr. Axeen's opinion that Na'Starja should exercise seizure precautions regarding water, but could participate in physical activities; and the conclusions of Drs. Familant and Saxby at the reconsideration level that Na'Starja has marked limitations in the domain of acquiring and using information, and less than marked limitations in the domain of attending and completing tasks and health and physical well-being. R. 33–34.

The ALJ did not find persuasive the opinion of Drs. Duckwall and Leizer in November 2015 that Na'Starja had less than marked limitations in the domain of acquiring and using information. R. 33. The ALJ noted that this opinion was given early during the period under review and was based on a small portion of the medical evidence. R. 33. The ALJ found that Na'Starja has a greater limitation in the domain of acquiring and using information than assessed by Drs. Duckwall and Leizer. Id.

The ALJ considered the six functional domains and determined that Na'Starja continued to have a marked limitation in the domain of acquiring and using information. R. 35. In the "acquiring and using information" domain, the Commissioner considers how well the child acquires or learns information, and how well the child uses the information that she has learned. 20 C.F.R. § 416.926a(g). Such a child "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). The ALJ specifically noted

Na'Starja's borderline intellectual functioning, her deficits in immediate memory, low scores in math, low GPA in school, IEP and her special education classes. The ALJ found that Na'Starja's limitation in this area is not extreme because she obtained low average and average scores on academic achievement testing in reading, language and spelling; she had no limitations in language; she understood what was said to her; and she could express herself adequately and at age appropriate level. R. 35. The ALJ noted that Na'Starja did well in ROTC and showed improvement in this domain on Ms. Keenan's teacher questionnaires. Id.

The ALJ determined that Na'Starja had a less than marked limitation in the domain of attending and completing tasks. R. 35–36. In the domain of attending and completing tasks, the Commissioner considers how well the child is able to focus and maintain attention and how well she is able to begin, carry through and finish activities, including the child's pace at which she performs activities and the ease with which she changes activities. See 20 C.F.R. § 416.962a(h). A school-age child without impairment should be able to focus her attention to "follow directions, remember and organize [] school materials" and complete assignments.[7] Id. § 416.926a(h)(2)(iv).  The child should be able to "concentrate on details," "not make careless mistakes," "stay on task," and be able to participate in group sports and complete chores. Id. An adolescent without impairment should be able to pay attention to increasingly longer presentations and discussions, organize her materials and plan her time to complete school tasks, and not be unduly distracted by or distracting to peers at school.[8] Id. § 416.926a(h)(2)(v).

Here, the ALJ noted Na'Starja's difficulty following multi-step instructions, finishing her homework, and completing assignments. R. 36. However, the ALJ concluded that these

---

[7] A school-age child is age 6 to 12.

[8] An adolescent is age 12 to 18.

difficulties did not rise to the marked level of impairment, noting that Na'Starja was not diagnosed with an attention deficit disorder, she did not take medication for concentration, her attention and concentration varied depending on the class and school year, and Ms. Keenan found these deficits "slight" in her 2016 teacher questionnaire. The ALJ noted that Na'Starja's attention and concentration were intact on her mental status examinations, and Dr. Sloop found that she had good ability to focus on a new task, sustain attention and persist on tasks, and maintain pace of thinking and task completion. Id. The ALJ also noted that Na'Starja was able to wash dishes, do laundry, assist with cooking and participate in community activities with her ROTC drill team. Id.

The ALJ found that Na'Starja had no limitation in the domains of interacting and relating with others, moving about and manipulating objects, and caring for yourself.[9] R. 36–38. Accordingly, because Na'Starja was found to have a marked impairment in only one of the six domains, the ALJ concluded that her impairments did not functionally equal the listings from November 19, 2015 to June 25, 2017. R. 30.

The ALJ determined that, from November 19, 2015 through June 25, 2017,  Na'Starja had the severe impairments of learning disorder, borderline intellectual functioning and seizure disorder. R. 40. The ALJ reviewed Na'Starja's records from the date she turned 18 (June 25, 2017) on and determined that she continued to have the severe impairments of borderline intellectual functioning and learning disorder. R. 44. The ALJ determined that despite these impairments, Na'Starja was capable of performing a full range of work at all exertional levels, but with the following non-exertional limitations: 1) understand, remember, apply and carry out unskilled repetitive tasks for two hours at a time with normal breaks; 2) concentrate, persist and

---

[9] I will not examine these domains in detail as Na'Starja has never been found to have a limitation in these domains and they are not at issue in this appeal.

maintain pace to complete unskilled repetitive tasks that do not require stringent quotas or fast

pace; 3) routine interactions with coworkers, supervisors and the public in work settings where

the job duties involve work primarily with objects rather than people; and 4) can adapt to

changes associated with unskilled repetitive work. R. 46.

In analyzing Na'Starja's RFC, the ALJ considered her mental impairments and

determined that she had a moderate limitation with understanding, remembering or applying

information; a mild limitation with interacting with others; a moderate impairment with

concentration, persistence or maintaining pace; and a mild limitation with adapting or managing

herself. R. 45–46.

The ALJ reviewed the testimony of Na'Starja and her mother regarding her living

situation, her part-time work at Walmart, her daily activities, and her difficulty keeping track of

things and forgetting. R. 47.   The ALJ reviewed the medical evidence reflecting that Na'Starja

was discharged from her mental health counseling due to age and non-compliance, she was

working at Walmart, she experienced anxiety only a few times a month, and she had normal

physical and mental health examinations. R. 47–48. The ALJ reviewed Na'Starja's educational

records and teacher reports in detail. The ALJ also noted that post-pregnancy, Na'Starja was

released to return to work with a limit to lift 20 pounds until she was six months postpartum.

R. 49.

The ALJ noted that despite Na'Starja's learning difficulties, she successfully graduated

from high school, she has intact language fluency and comprehension and memory. R. 50.  The

ALJ determined that Na'Starja's daily living activities reveal a higher level of cognitive

functioning than Na'Starja indicated, including maintaining part-time employment, operating a

cash register or other equipment, interacting with customers, and dealing with supervisors.  The

21

ALJ noted that Na'Starja has assistance from family in managing her work schedule and doctor appointments but takes care of her infant daughter and performs household chores. R. 50.

The ALJ noted that the opinions from Na'Starja's treating providers limiting her lifting were given shortly after her pregnancy and were temporal. R. 52.  The ALJ noted that Na'Starja routinely had normal physical examinations, with intact gait, strength, coordination and sensation. Id.

Accordingly, the ALJ concluded that Na'Starja has no exertional restrictions.  However, the ALJ included substantial mental restrictions in Na'Starja's RFC to accommodate her moderate impairments in understanding, remembering or applying information and concentrating, persisting or maintain pace. R. 52.

The ALJ's opinion thoroughly examines the evidence in the record from the time Na'Starja first qualified for benefits in 2007 through attaining adulthood and beyond.  The ALJ continued to find that Na'Starja had a marked limitation in the domain of acquiring and using information from 2007 through 2017; however, she found that Na'Starja's seizure disorder and anxiety disorder improved, and her ability to attend and complete tasks improved.

Substantial evidence supports the ALJ's conclusion that Na'Starja no longer had a marked limitation in the domain of attending and completing tasks as of November 2015. The ALJ recognized Na'Starja's difficulty following multi-step instructions, finishing her homework and classwork, but noted that Na'Starja was not diagnosed with attention deficit disorder, did not take medication for concentration deficits, that her teacher reports varied regarding her ability to attend and complete tasks, that her mental status examinations reflected intact attention and concentration, and that Dr. Sloop's 2015 consultative examination found good ability to focus on a new task and sustain attention and persist on tasks. R. 807.  Thus, the ALJ identified substantial

evidence to support her conclusion that Na'Starja had a less than marked limitation in attending and completing tasks as of November 19, 2015.

The ALJ's finding that Na'Starja was not disabled after attaining adulthood is also supported by substantial evidence. The ALJ noted that Na'Starja's seizure disorder was asymptomatic from November 2015 on, aside from one breakthrough seizure in 2018. There are no other physical restrictions supported by the evidence, aside from temporary restrictions related to Na'Starja's pregnancy. Thus, the ALJ determined that Na'Starja can perform a full range of exertional work.

Regarding Na'Starja's mental limitations, substantial evidence supports the ALJ's determination that Na'Starja had a moderate limitation with concentration, persistence or pace. The ALJ accommodated Na'Starja's limitation by restricting her to work involving unskilled repetitive tasks for two hours at a time with normal breaks, and that do not require stringent quotas or fast pace.

Substantial evidence also supports the ALJ's conclusion that Na'Starja has a moderate limitation with understanding, remembering or applying information, and that despite this limitation, she can perform unskilled, repetitive work. The ALJ noted that Na'Starja has borderline intellectual functioning and deficits in immediate memory, and that she scored low average and average scores on academic testing in reading, language and spelling. R. 42. The ALJ noted that Na'Starja understood what was said to her, could express herself adequately and at an age appropriate level, and participated in ROTC. Id. The ALJ noted that Na'Starja worked as a cashier at Walmart, noted that she was learning to manage her anxiety, was friendly to treating providers and assertive with peers. R. 7.

The ALJ recognized that Na'Starja continues to suffer from borderline intellectual function and learning disorder; however, the ALJ determined that despite those limitations, Na'Starja is capable of performing some types of work with unskilled, routine tasks with no stringent quotas or fast pace, routine interactions with others in work settings, and job duties primarily with objects rather than people. The ALJ reviewed Na'Starja's records and testimony in a detailed and thorough opinion and limited her to a restricted range of work to fully accommodate her limitations. Overall, the ALJ carefully considered the evidence of record, and analyzed the evidence under the five-step process as required by the applicable law and regulations. I find that substantial evidence supports the ALJ's finding of no disability.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND DENYING** Na'Starja's Motion for Summary Judgment, **GRANTING** the Commissioner's Motion for Summary Judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objections, including the waiver of the right to appeal.

Entered:  July 27, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge