CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/30/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| NA'STARJA S.,[1] <br>         *Plaintiff,* <br><br> v. <br><br> KILOLO KIJAKAZI,[2] *Acting Commissioner, Social Security Administration*, <br><br>         *Defendant.* | CASE NO. 6:20-cv-00008 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

  Plaintiff Na'Starja S., proceeding pro se, filed this action challenging the Commissioner of Social Security's final finding that she is not disabled and accordingly not entitled to supplemental social security income ("SSI") benefits under the Social Security Act. 42 U.S.C. §§ 1381, *et seq.*

  Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to U.S. Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. The parties have filed cross motions for summary judgment, Dkts. 4, 18, 22, and Judge Ballou issued a Report & Recommendation ("R&R"), which recommended that the Court deny Plaintiff's motion for summary judgment and grant the Commissioner's. Dkt. 25. Considering the R&R, Plaintiff's objections and the Commissioner's response, Dkts.

---

[1] The Court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that, due to privacy concerns, courts only use the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kiiakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.

26, 28, 29 and the administrative record, the Court finds Plaintiff's objections lack merit. The Court will adopt the R&R and award summary judgment to the Commissioner.

Standard of Review

The Court conducts a de novo review of those portions of the R&R to which Plaintiff objects. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When examining a Social Security Administration ("SSA") disability determination, the reviewing court must uphold factual findings of the Administrative Law Judge ("ALJ") if they are supported by substantial evidence and were reached under application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012). The "threshold for such evidentiary sufficiency is not high" under this standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Substantial evidence is more than a mere scintilla—but less than a preponderance—of the evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Biestek*, 139 S. Ct. at 1154 ("more than a mere scintilla"). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the ALJ's decision. *Id.* Moreover, the reviewing court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589. "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

<u>Legal Framework</u>

A claimant under 18 years' old is "disabled" under the Social Security Act if she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(C)(i).

> There is a three-step sequential evaluation process to determine if a minor is disabled.
>
> <u>Step one</u>. The ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled.
>
> <u>Step two</u>. The ALJ determines if the claimant has "an impairment or combination of impairments that is severe." If not, the claimant is not disabled. A severe impairment is one that causes more than a minimal affect on a claimant's ability to function. A "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations" is not severe.
>
> <u>Step three</u>. The ALJ determines if such impairment or combination of impairments "meet, medical equal, or functionally equal the listings." If so, the claimant is disabled.

*See* 20 C.F.R. § 416.924(a)–(d).

To find that an impairment functionally equals a listing, the adjudicator must find that the impairment results in a "marked" limitation in two domains of functioning or "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The domains are broad areas of functioning that are meant to capture all of what a child can or cannot do. 20 C.F.R. § 416.926a(b)(1). The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation in a domain is one in which a claimant's impairment(s) interferes seriously with her ability to independently initiate, sustain, or complete activities. It is a

3

limitation that is "more than moderate" but "less than extreme." Day-to-day functioning may be seriously limited when the claimant's impairment(s) limits only one activity or when their interactive and cumulative effects limit several activities. A "marked" limitation is equivalent of the functioning expected on standardized testing with scores of at least two, but less than three, standard deviations below the mean. 20 C.F.R. § 416.926a(e)(2)(i).

An "extreme" limitation in a domain means an impairment interferes very seriously with the claimant's ability to initiate, sustain, or complete activities. It is a limitation that is "more than marked," although it "does not necessarily mean a total lack or loss of ability to function." Day-to-day functioning may be very seriously limited when impairments limit only one activity or when the interactive and cumulative effects of the impairments limit several activities. An "extreme" limitation is the equivalent of the functioning expected of standardized testing with scores at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3).

After the Commissioner awards SSI benefits to a minor, the Commissioner must periodically review a child's continued eligibility for benefits. 20 C.F.R. § 416.994a(a). In conducting this review, first the Commissioner determines whether the claimant experienced medical improvement since the comparison point decision, or "CPD." Medical improvement is any decrease in the medical severity of the impairment(s) present and documented at the CPD. Although the decrease in severity may be of any quantity or degree, minor changes in symptoms, signs or laboratory findings are disregarded. 20 CFR 416.99(a)(c).

If not, then the claimant continues to remain disabled. 20 C.F.R. § 416.994a, (a)(1), (b)(1). Second, if the CPD was made after January 2, 2001, and there has been medical improvement, the Commissioner determines if the impairment the claimant had at the CPD now meets or medically equals the same listing it met or medically equaled at the time of the CPD, or whether the impairment functionally equals the listings. 20 C.F.R. § 416.994a(a)(1), (b)(2).

4

Third, if the child's impairment no longer meets or medically equals the same listing it did at the time of the CPD, and does not functionally equal the listings, the Commissioner determines whether the claimant is currently disabled under the three-step sequential analysis in 20 C.F.R. § 416.924 for determining whether a child is disabled in the first instance.

## Appeal

Plaintiff does not object to the R&R's recitation of the claim history of this case. The Court will adopt that portion of the R&R into this opinion.

Plaintiff's objections to the R&R are difficult to understand. But the Court is under a duty to construe her informal brief liberally. *See Miller v. Barnhart*, 64 F. App'x 858, 859 (4th Cir. 2003). With that in mind, Na'Starja S. appears to challenge: (1) the ALJ's finding that her condition was medically improved as of November 19, 2015 and (2) the ALJ's finding that her ongoing limitation in the domain of acquiring and using information[3] was not "extreme."[4]

## Improved Medical Condition as of November 19, 2015

The ALJ did not act contrary to substantial evidence in finding medical improvement as of November 19, 2015. In 2007, Na'Starja S. was diagnosed with a learning disorder, anxiety

---

[3] Plaintiff objects to that fact that her borderline intellectual functioning, memory deficits, poor academic performance, and participation in special education accommodations were not found to be "extreme." Dkt. 26 at 1–2. Since these impairments are most closely tied to the domain of acquiring and using information, the objection will be construed as challenging the ALJ's finding that these impairments do not result in an "extreme" limitation to that domain.

[4] Plaintiff also objects to the fact that she did not receive a copy of the Commissioner's brief by its due date, that she was not given an opportunity to file her own brief in response to the Commissioner's, and to the fact that the Commissioner was permitted extra time to file his brief. Dkt. 26 at 1. These objections are denied because the Commissioner's brief was timely filed, though it was not received on the same day by Plaintiff; social security plaintiffs do not have a right to file a reply brief; and Judge Ballou did not err in allowing the Commissioner extra time to file his brief. Plaintiff also objects to the substitution of the new acting Commissioner of Social Security, Kilolo Kijakazi. Dkt. 29 at 1. This substitution was lawful Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

disorder, borderline intellectual functioning, and seizure disorder. R. 763. This is her comparison point decision, as it was the most recent point at which she was determined disabled.

With respect to her learning disorder and borderline intellectual functioning, the ALJ relied heavily on the contrast between the findings of the consultative examiner in 2007 and 2015. In 2007, Dr. E. Wayne Sloop stated that Na'Starja S. demonstrated difficulty understanding what was said to her and that her ability to sustain attention and focus on tasks was only fair. R. 25. *See* R. 761. But in 2015, Dr. Sloop reported that Na'Starja S. had good ability to sustain attention and persist on tasks, her pace of thinking and task completion were good, and that she did not demonstrate any problems understanding what was said to her. R.25. *See* R. 805.

The ALJ also relies on Na'Starja S.'s education records. In 2007, those records showed that Na'Starja S. was unable to complete work without one-on-one assistance, had trouble focusing on her work, did not comprehend what is being asked of her, rarely understood and remembers oral instructions, could not read, and received reading services. R. 25. *See* R. 253. A teacher questionnaire from 2007 also shows that Na'Starja S. exhibited "a very serious problem" reading and/or comprehending written material, expressing ideas in written form, and applying problem solving skills in class discussions. R. 271. One teacher noted that Na'Starja S. had increased difficulty concentrating since her seizures. R. 768.

The ALJ found it significant that in 2015 teachers no longer indicated that Na'Starja S. needed one-on-one assistance to complete assignments. R. 25. However, it is notable that some teachers identified as an area of needed improvement Na'Starja S.'s failure to ask for help when needed, as well as her resistance to help when offered. R. 326. These reports also show that Na'Starja S. required special education services, had missing work in some classes, and did not prepare adequately for tests and quizzes. R. 25. *See* R. 326. On the other hand, some teachers

indicated that Na'Starja S. was well-organized, used class time wisely, prioritized her work, and asked for help when necessary. R. 25. *See* R. 327.The ALJ also highlighted mental status examination findings from 2015 that Na'Starja S. exhibited intact attention and concentration, R. 849, and could follow demonstrated and simple oral instructions, although she did have a noted difficulty in following multi-step instructions. R. 25; *See* R. 315. The ALK also noted that Na'Starja S. had achieved her Individualized Education Plan reading and writing goals. R. 25; *See* R. 433.

The ALJ acknowledged that in 2015 Na'Starja S. continued to be below grade level in several subjects at school. R. 25. And that her IQ score dropped between the 2007 and 2015 consultative exams from a full-scale score of 75 to a full-scale score of 72. R. 25. *Compare* R. 763 *with* R. 806.

With respect to seizures, the ALJ noted that Na'Starja S.'s medical records at the time of the CPD indicated that she was taking Keppra and had suffered several seizures in 2006. R. 25. *See* R. 276, 769. But that by 2015 she had not experienced a seizure for several years. R. 26. *See* R. 804.[5]

While the inferences drawn from some of the evidence described above are tenuous, Na'Starja S.'s decrease in seizures and enhanced ability to communicate is sufficient evidence of medical improvement to meet the substantial evidence standard. The Court may not re-weigh the evidence. Na'Starja S.'s objection to the ALJ's finding of medical improvement will be denied.

Marked vs. Extreme Limitation in Domain of Acquiring and Using Information

---

[5] The ALJ indicates that Na'Starja S. had been weaned off Keppra by 2015, R. 26, but that is not appear to be what the record reflects.

Neither did the ALJ act contrary to substantial evidence in failing to find an "extreme" limitation in the domain of acquiring and using information. Despite Na'Starja S.'s borderline intellectual functioning, memory deficits, low scores in math, low GPA in school, and her need for school accommodations, the ALJ found that Na'Starja S.'s limitation in the domain of acquiring and using information was not "extreme" because she obtained low average and average scores on academic achievement testing in reading, language, and spelling. R. 35. *See* R. 317, 394–396. She had no limitations in language, she understood what was said to her, and she expressed herself adequately and at an appropriate level. R. 35. *See* R. 805.

Na'Starja S. specifically objected to the ALJ's decision not to afford weight to the Teacher Questionnaire filled out by Na'Starja S.'s algebra teacher, Ms. Keenan, in May 2015. Dkt. 26 at 2. That questionnaire reported "a series problem" in four areas related to the domain of acquiring and using information: comprehending and using math problems, providing organized oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem solving skills in class discussions. R. 307.

But the ALJ did not ignore this questionnaire. Instead, it chose to give greater weight to the questionnaire filled out by Ms. Keenan in June 2016. R. 35. In her answers to the subsequent questionnaire, Ms. Keenan found only "slight" or "obvious" problems in the domain of acquiring and using information. R. 402. Given the whole record, it was consistent with substantial evidence for the ALJ to decline to base a finding of "extreme" limitation on one questionnaire, which was mitigated by a subsequent questionnaire filled-out by the same teacher and contextualized by average or near average academic achievement test results.

Na'Starja S. also objected to the ALJ's decision not to afford weight to certain medical opinions. Dkt. 26 at 2. But no medical opinion, credited or uncredited, asserted an "extreme" limitation in the domain of acquiring and using information.

Na'Starja S.'s objection to the ALJ's failure to find an "extreme" limitation in the domain of acquiring and using information will also be denied.[6]

Conclusion

The Court further concludes that substantial evidence supports the ALJ's finding that Plaintiff's disability ended as of November 19, 2015, and that the claimant has not become disabled again since that date. Accordingly, the Court will overrule Plaintiff's objections, adopt the R&R, and affirm the final decision of the ALJ.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

ENTERED this __30th__ day of September, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] In as much as Na'Starja S. may be objecting to the fact that the ALJ did not find an "extreme" limitation with regard to "understanding, remembering, or applying information" in the analysis of whether she had an impairment that functionally equaled a listing after she turned 18, the ALJ did not act contrary to substantial evidence by finding only a "moderate limitation" in that criteria because of her successful work as a cashier at Walmart, without any evidence that she requires assistance in operating the cash register or other electronic equipment, interacting with customers, accepting payment, or making change. R. 45.

9